353 F.Supp. 555 (1973)
SLAY TRANSPORTATION CO., INC., Plaintiff,
v.
UNITED STATES of America and Interstate Commerce Commission, Defendants.
No. 71 C 603(3)
United States District Court, E. D. Missouri, E. D.
January 16, 1973.
*556 *557 McBride, Simon & Ruzicka, St. Louis, Mo., for plaintiff.
Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., James F. Tao, Atty., Interstate Commerce Comm., Washington, D. C., for defendants.
James L. Hawkins, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, Mo., for intervening defendants Kreider Truck Service, Inc. and Truck Transport, Inc.
Ernest A. Brooks, II, St. Louis, Mo., for intervening defendant Frank Beelman, Jr.
Before MATTHES, Chief Circuit Judge, and WEBSTER and WANGELIN, District Judges.
WEBSTER, District Judge.

MEMORANDUM OPINION
Plaintiff, Slay Transportation Co., Inc., seeks review of the order of the Interstate Commerce Commission; Review Board No. 3, decided December 31, 1970 and served January 13, 1971, and of the order of the Interstate Commerce Commission, Appellate Division, dated June 7, 1971 and served July 19, 1971, which denied plaintiff's petition for reconsideration.[1] Plaintiff seeks to annul, set aside, suspend and enjoin such orders, and a three judge court was therefore convened. 28 U.S.C. § 2325, § 2284. The court also has jurisdiction under 28 U.S.C. § 1336. Plaintiff maintains its principal office in St. Louis, Missouri, within this district, and venue is therefore properly found in this district. 28 U.S.C. § 1398.
In its orders, fn. 1 supra, the Commission granted authority to Kreider and Truck Transport to transport lime and limestone products over irregular routes from Ste. Genevieve, Missouri to points in Arkansas, Kentucky, Illinois (except points in Madison County) and Louisiana. It granted Beelman authority to transport lime and limestone products from Ste. Genevieve, Missouri to points in Illinois (other than Madison County). See 49 U.S.C. § 307(a).
Plaintiff Slay is presently authorized to transport the same commodities, in bulk, from Ste. Genevieve, Missouri to all points sought by the three applicants. L. A. Tucker Truck Lines, Inc., who also opposed the applications, has the same authority, in bags and in bulk, to transport to points in Illinois (except bags to points in the Chicago, Illinois commercial zone and bulk to Madison County).[2]
Plaintiff contends that the primary supporting shipper has not made full use of the existing certified carrier (plaintiff), that Truck Transport has operated illegally in the involved area, that the modified procedure employed by the Commission in this case prevented plaintiff from discrediting assertions made in affidavits supporting the applications, that the findings of the Commission are inadequate and that its conclusions are unsound. Thus, the questions sought to be reviewed by this court are as follows:
1) Whether the procedure before the Commission unfairly prejudiced the plaintiff in presenting its case.
2) Whether the findings of the Commission are inadequate and not substantially supported by the record.
3) Whether the Commission abused its discretion in determining that the public interest required that future shipping needs should be assured through service by multiple carriers.
We answer these questions in the negative and affirm the orders of the Interstate Commerce Commission.

*558 1. The Modified Procedure

The statutory scheme for processing applications provides that a party to an I.C.C. proceeding must first seek reconsideration by the Commission before bringing suit to set aside that Commission's decision. 49 U.S.C. § 17(9). Any contentions not raised in the petition for reconsideration are deemed waived and may not be thereafter asserted in the court action. As was said in United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952)
"Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."
While plaintiff made a timely application for oral hearing and for an opportunity to cross-examine witnesses supporting the application, the Commission instead ordered the applications processed pursuant to its modified procedure whereby all parties are allowed ample opportunity to present their evidence, including rebuttal, in writing. No exception to this order was asserted in the subsequent motion for reconsideration. No serious contention is made that the modified procedure is violative of due process. Indeed, the Administrative Procedure Act does not require oral hearings, and such hearings are required only when mandated by some other statutory requirement not present in or applicable to this case. Allied Van Lines Co. v. United States, 303 F.Supp. 742 (C.D. Calif. 1969). We are therefore concerned only with the sufficiency of the record under the modified procedure to support the findings of the Commission.

2. The Adequacy of the Findings

The Commission found upon the record before it that (1) additional motor carrier service is required to meet the supporting shipper's present and prospective needs; (2) the existing carriers (plaintiff and L. A. Tucker Truck Lines, Inc.), collectively, are not capable of handling the tonnage from Ste. Genevieve; and (3) each applicant is fit, willing and able properly to perform such services.
(a) The need. The record shows, and the Commission found, that in 1969 truck movements from Ste. Genevieve totalled 258,312 tons or an estimated 12,000-plus truck loads. Mississippi Lime Company is the largest producer of high quality lime and limestone products in the world. It also produces such products as hydrated lime, mineral filler, coal mine rock dust, precipitated calcium corbonate, and glass tone. Lime is used in large quantities by a large number of industries in a variety of forms and processes.[3]
In 1968 Mississippi Lime's products moved, by all modes of transportation: 505,129 tons to 55 Illinois points; 2,354 tons to 11 Arkansas points; 5,601 tons to 7 Louisiana points; and 431,257 tons to 30 Kentucky points. These findings are not disputed, nor is the finding by the Commission disputed that customers are unwilling to tie up money in inventories and that truck carriage is required. Indeed, the surge in activity and industry requiring additional limestone presently and in the near future is so well detailed in the record and accurately summarized in the Commission's findings that plaintiff does not seriously question that the business is there.[4] Rather, it complains that the *559 shipper has not tendered the additional business to the certified carriers and has permitted Truck Transport to operate illegally within the area.
With the increase in demand for limestone products has come demand for increased use of bulk equipment, including the basic dump truck, pneumatic unloading trailers and more sophisticated equipment used for delivery by spreading of lime on highway construction jobs.
(b) Present inadequacy. The record reveals that in 1969 plaintiff Slay transported, for Mississippi Lime, 62 truckloads to 6 Kentucky destinations, 177 truckloads to 5 Illinois points and 6 truckloads to Pine Bluff and Perry, Arkansas. It operates 19 dry bulk units suitable for transporting lime and limestone products. In 1969, Tucker transported some 15,000 tons from Ste. Genevieve to certain points in Illinois. It has 1 pneumatic-hopper type trailer and 8 flat beds suitable for Mississippi Lime's products.
The extensive growth of Mississippi Lime movements by truck from Ste. Genevieve (300 per cent from 1963 to 1969) is not disputed, nor is the anticipated future demand. Slay has been compelled to rent equipment from Kreider and Beelman to meet the demands for service, and shippers testified that the existing service was insufficient and, if not improved, resort to private or self-carriage would be necessary.
(c) Fitness. The record shows that Kreider, Truck Transport and Beelman are experienced carriers with substantial fleets of suitable equipment. Plaintiff's only attack upon fitness is based upon the illegality of the tacking operations by which Truck Transport has heretofore transported products for Mississippi Lime to points in Illinois. In its report, the Review Board of the Commission commented on and disapproved these practices. The record discloses, however, that Truck Transport had acted upon opinion of counsel and a colorable showing of right, and in the proceedings stated it would discontinue if the practice were found to be improper. Past misconduct is not sufficient as a matter of law to bar the grant of an application. Armored Carrier Corporation v. United States, 260 F.Supp. 612 (E.D.N.Y. 1966), aff'd per curiam 386 U.S. 778, 87 S.Ct. 1476, 18 L.Ed.2d 524 (1967), reh. denied 388 U.S. 924, 87 S. Ct. 2106, 18 L.Ed.2d 1378 (1967). And this is especially true where the operations, though unauthorized, were conducted in good faith. Interstate Common Carrier Council v. United States, 84 F.Supp. 414 (D. Md. 1949), aff'd per curiam 338 U.S. 843, 70 S.Ct. 91, 94 L. Ed. 516 (1949).
We hold that the findings of the Commission are adequate to permit the court to perform its function of judicial review. Alabama G. S. R. Co. v. United States, 340 U.S. 216, 218, 71 S.Ct. 264, 95 L.Ed. 225 (1951). Read as a whole, the essential basis is disclosed. Soo Line Railroad v. United States, 271 F. Supp. 869, 872 (D. Minn. 1967).
Upon a review thereof, we further hold that there is substantial evidence to support the factual findings of the Commission. We must also determine whether the order is otherwise in accord with the law. Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L. Ed. 821 (1946).

3. The Commission's Conclusions

In granting the application, the Commission bottomed its decision upon the following balancing of interests:
"In view of the foregoing, we conclude that additional motor carrier service is required to meet the supporting shippers' present and prospective needs, and further, that in the circumstances present here, the quantum of service presently available is inadequate to meet these demonstrated needs. Although existing carriers normally are entitled to all available *560 traffic and should be afforded an opportunity to participate in the movement thereof before a new competitive service is instituted, we believe that the need of the supporting shippers here for the proposed operations by applicants clearly outweighs the interests of the opposing carriers which, collectively, are not capable of providing enough equipment to handle the tonnage from Ste. Genevieve." 115 M.C.C. 614, 615
"The criteria by which the ICC [chooses] to make determinations of public convenience and necessity may not be criticized by this Court unless they are found to be capricious or irrational. The scope given the ICC is broad, and within this scope the ICC may choose criteria and weigh evidence of public convenience and necessity as it sees fit." United Van Lines, Inc. v. United States, 266 F.Supp. 586, 589 (E.D. Mo. 1967). The Commission had before it substantial evidence that the quantum of service presently available was inadequate and could reasonably have inferred that the absence of competition may have contributed to this condition. The main focus of its concern, however, was upon the need to keep up with the expanding limestone shipments, taking into account the interests of the presently authorized carriers, the shippers and the public.
The Commission has discretion to determine whether the public interest requires that future shipping needs should be assured, rather than left uncertain. United States v. Detroit and Navigation Co., 326 U.S. 236, 241, 66 S. Ct. 75, 90 L.Ed. 38 (1945). One dominant service may not, without effective competition be an adequate service. Santa Fe Trail States, Inc. Common Carrier Application, 21 M.C.C. 725, 748 (1940). Some competition may be in the public interest where it will secure the benefits of an improved service without being unduly prejudicial to the existing service. Hudson Transit Lines v. United States, 82 F.Supp. 153, 157 (S.D.N.Y. 1948). The existing carrier has no vested right to all future business in the area. Other considerations may justify granting additional certificates "even though the existing [carrier] might arrange to furnish successfully the projected service." United States v. Dixie Express, 389 U.S. 409, 411, 88 S.Ct. 539, 540, 19 L.Ed.2d 639 (1967). While the Commission did find the quantum of service presently available was inadequate to meet present as well as future needs, such a finding is not a condition precedent to a grant of additional authority where other significant considerations are present, such as the desirability of competition, of different kinds of service or of improved service (all of which are present here). See Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D. N.H. 1964); United States v. Detroit and Navigation Co., supra. Upon the record of this case, we think the conclusions of the Commission, based upon findings substantially supported by the record, were neither irrational nor capricious, but were well within the area of discretion accorded to the Commission under the applicable law.
Judgment will be entered affirming the Order of the Commission and dismissing the action.
So ordered.
NOTES
[1] Docket No. MC-114194 (Sub. No. 153), Kreider Truck Service, Inc., Extension Lime and Sandstone Products, which order embraces Docket No. MC-115331 (Sub. No. 274), Truck Transport Incorporated, Extension  Lime and Limestone Products, and Docket No. MC-115821 (Sub. No. 12), Frank Bulman, Jr., Extension  Lime and Limestone Products.
[2] Truck Transport had been unsuccessful in its earlier attempts to obtain authority in Illinois after Slay obtained its authority. See Truck Transport, Incorporated v. United States, 300 F.Supp. 159 (E.D. Mo.1969); Truck Transport, Incorporated v. United States et al. (E.D.Mo., 69c 21, 1970).
[3] I.C.C. No. MC-114194 (Sub. No. 153) at 609-10.
[4] Anticipated truck movements for 1970 was placed at 15,000. The situation is compounded by the inability of an Illinois producer, Columbia Quarry Co., to meet the demand of its customers and the resulting overflow of orders to Mississippi Lime Company, which must be filled from the Ste. Genevieve facilities.