In the Matter of the Application of RULE RADIOPHONE SERVICE, INC. for Authority to Amend its Existing Certificated Radio Common Carrier Service Area to Conform with the latest Service Area Directive of the Wyoming Public Service Commission as contained in Docket No. 9658 Sub 1 and Docket No. 9438 Sub 2.

TELSTAR COMMUNICATIONS, INC., Appellant (Petitioner),

v.

RULE RADIOPHONE SERVICE, INC., and the Public Service Commission of Wyoming, Appellees (Respondents).

No. 5326.

Supreme Court of Wyoming.

Dec. 17, 1980.

242

Arthur Kline, Kline & Swainson, argued, Cheyenne, for appellant.

Cary R. Alburn, III, argued, Laramie, for Rule Radiophone Service, Inc.

John D. Troughton, Atty. Gen., Thomas J. Carroll, III, Senior Asst. Atty. Gen., and Lawrence J. Wolfe, Asst. Atty. Gen., argued, Cheyenne, for Public Service Commission.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

This appeal arises from a district court's decision upholding an order by the Public Service Commission (PSC) which granted a petition by Rule Radiophone Service, Inc. (Rule), seeking a redefinition of its certificate service area.  Telstar Communication,

Inc. (Telstar), challenges the PSC's order as unsupported by substantial evidence, arbitrary and capricious, and exceeds the scope of the PSC's authority and jurisdiction. Both Rule and Telstar operate radio telephone exchange services as radio common carriers (RCC).

We will affirm.

In 1974, the predecessors in interest to Rule and Telstar petitioned the PSC for authority to provide mobile radio telephone and paging service for the southeast corner of Wyoming. In particular both petitions sought the right to service the cities of Cheyenne and Laramie, Wyoming. At that time the PSC, after conducting several days of hearings, granted Rule a certificate of public convenience and necessity covering the City of Laramie and its "surrounding territory," while Telstar was granted a certificate of public convenience and necessity to serve the City of Cheyenne and "surrounding area" as its market.

Following the PSC's action, Rule obtained the necessary Federal Communications Commission (FCC) authority to install its very high frequency (VHF) transmitter on Sherman Hill, forty miles west of Cheyenne. After the transmitter was installed, it was discovered that it would service a far more extensive area than the PSC had estimated in its order. Not only was Laramie covered but also in reach were Pine Bluffs, Cheyenne, Wheatland, Chugwater, Rock River, Shirley Basin, and Hanna, among other Wyoming towns. Thus in 1978, after the PSC had in another case involving three RCC's in Natrona County (PSC Docket Nos. 9658 Sub 1 and 9438 Sub 2) recognized the impracticality of the technique used to originally estimate Rule's service area, Rule filed a petition seeking to redefine its certificate area according to where the signals from the transmitter were actually received. Radio signals cannot be confined to a particular geographic area such as a county as can the land lines of a wire telephone service, the electric transmission wires of a power company, the pipes of a pipeline company or the rails of a railroad.[1] Telstar, which had just commenced ultra high frequency (UHF) operations, protested and intervened in the proceeding urging the PSC to disapprove and not legitimize what it termed Rule's invasion of the Cheyenne market for which Telstar had been certificated by the PSC.

Following a hearing on the matter, the PSC set out in its memorandum opinion and order:

"15. The Commission specifically finds the testimony and evidence of record to be sufficient to support a finding that the redefinition sought by Rule is necessary and in the public interest. In support thereof, the Commission finds:

"(a) That the redefinition requested by Rule should be granted as it will provide increased VHF coverage in southeastern Wyoming;

"(b) That such a redefinition should have a beneficial revenue impact upon Rule's RCC operations;

"(c) That such a redefinition will further the policy of regulated competition[2]

---

1. As explained in the testimony of Mr. Robert R. Rule, president and owner of 90% of the stock of Rule, "the actual service area of a radio common carrier is almost universally from a practical standpoint simply that area where a mobile [radio] can communicate with it." By means of what is referred to as a field intensity meter, the reach of a radio transmitter can be determined on the ground. The FCC uses a standard of 37 dbu (37 decibels above a microvolt). When field measurements are taken, the result is that, though radio signals leave an antenna in a circular wave form, the irregularity of terrain provides an erratic wave form and the strength of the signals on the ground results in an irregular shaped efficient reception area. Rule wants its service area redefined to fit the area actually served by its antenna. This area extends not only into Albany County but also into Carbon County, Laramie County and Platte County. Its mobile units installed in the vehicles of its subscribers travel into all these areas.

2. Telstar does not disagree with the PSC's policy of "regulated competition." In *Dubois Telephone Exchange v. Mountain States Telephone and Telegraph Company*, Wyo.1967, 429 P.2d 812, this court held that two similar utilities may have rights in the same territory and the PSC is authorized in the event of a conflict between two utilities to make such order and prescribe such conditions as to it may seem just and reasonable and that § 37–2–205(a),

heretofore adopted by this Commission; and

"(d) That such a redefinition should act to provide increased service reliability to all customers of Rule Radiophone Service, Inc."

It then concluded by redefining Rule's service area to include the Cheyenne area requested.

■ Appellant first attacks the PSC's order as unsupported by substantial evidence. It contends that the evidence presented during the hearing was clearly inadequate to sustain the conclusion that there existed in Cheyenne a need for Rule's service. We do not agree.

Section 37–2–205(a), W.S.1977, provides:

"(a) No public utility shall begin construction of a line, plant or system, or of any extension of a line, plant or system without having first obtained from the commission a certificate that the present or future public convenience and necessity require or will require such construction. This act shall not be construed to require any public utility to secure a certificate for an extension within any city or town within which it has lawfully commenced operation, or for an extension into territory contiguous to its line, plant or system for which no certificate is in force and is not served by a public utility of like character or for any extension within or to territory already served by it, necessary in the ordinary course of its business. *If any public utility, in constructing or extending its line, plant or system interferes or is about to interfere with the operation of the line, plant or*

*system of any other public utility already authorized or constructed, the commission on complaint of the public utility claiming to be injuriously affected, may after hearing make such order and prescribe the terms and conditions for the location of the lines, plants or systems affected, as to it are just and reasonable.* The power companies may, without the certificate, increase capacity of existing plants."

Though Rule's petition did not request permission to begin new construction, it is clear that by granting it, the PSC in effect cleared the way for construction of new transmitters anywhere in the enlarged area, as long as approved by the FCC. This is true because once the PSC certificates the radio–telephone service area, it loses its power to bar such construction since jurisdiction has then been effectively transferred to the FCC. Only the FCC can authorize installation of radio broadcast facilities preempted by the United States. Title 47, U.S.C. Thus, under the statute, the PSC's conclusion that the public need requires the extra coverage is crucial to the result since in effect it has authorized construction of a new transmitter. There was substantial evidence supporting the PSC's finding. Testimony was offered establishing that there were already Cheyenne customers dependent upon Rule's service; this resulted because Rule and Telstar cater to different clientele; Mountain Bell[3] also failed to satisfy the needs of Rule's customers; Telstar's service was inadequate to serve transients; Rule could provide VHF service while Telstar was limited to UHF; if the PSC were to recognize primary and second-

W.S.1977, infra, formerly § 37–31, W.S.1957, does not contemplate that only one public utility will be granted a certificate of public convenience and necessity for furnishing telephone service within a certificated area. At the time, in 1975, Rule and Telstar were granted certificates, the PSC also granted to Airsignal International, Inc. a certificate to provide mobile and paging service to the cities of Cheyenne and Laramie and surrounding territory but it never commenced operations and at its request, the certificate was canceled. This represents a consideration that competition was contemplated at that time.

3. Mountain Bell did not intervene in this proceeding, though public notice was given. Mountain Bell provides a different mobile telephone service connecting to its land lines. Mr. Rule testified that not only does Mountain Bell operate on different frequencies but also the main difference is that Mountain Bell does not provide secretarial service such as call forwarding, message retention, call holding, patching and so forth. The evidence disclosed that both Rule and Telstar have leased lines with Mountain Bell and can patch a mobile unit into them and provide communication from a mobile radio to a Mountain Bell subscriber.

ary service areas based on actual coverage rather than estimates, then serious problems presented elsewhere in the state could be avoided; and finally the public would benefit from limited competition because the competitors would offer a wider range of services. Thus under § 9–4–114(c)(ii)(E), W.S.1977, 1980 Cum.Supp.[4] we must uphold the PSC's finding of fact that there was public need and convenience.

■ The ultimate weight to be given evidence before the PSC as a trier of fact is to be determined by that agency in the light of the expertise and experience of its members in such matters. *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, Wyo.1968, 446 P.2d 550. We will not substitute our judgment for that of the PSC if the PSC's decision is supported by substantial evidence. *Sage Club, Inc. v. Employment Security Commission of Wyoming*, Wyo.1979, 601 P.2d 1306. We think it is, in that it seems to meet the standard of relevant evidence adequate to support a conclusion as set out in Sage Club.

■ Appellant next challenges the PSC's conclusion that because Rule's service operated on a VHF level while Telstar's was on a UHF one, they were not of like character. However, this conclusion was not essential to the decision to grant the redefinition of Rule's service area. We agree with the district judge when in his letter opinion he stated that it was difficult for him "to conceive any practical difference in the nature or character of services furnished by each of the RCC's in this case other than the difference in radio frequencies utilized and authorized by the FCC. The character of services available would seem to be the same." We also observe that VHF and UHF are distinctions without a difference. Rule and Telstar could have been just as widely separated had they both been on the same radio frequency band but with different assigned wave lengths. The district judge then concluded that would not be ground for reversal and was within the expertise of the PSC but that it was a "thin reed" for Telstar to rely on in the face of a policy of regulated competition.

We consider the most significant findings of fact of the PSC are that (1) the protest of Telstar is based upon competitive factors in that its allegations are that certification of Rule into the City of Cheyenne would decrease the market available to Telstar and make survival an economic uncertainty–Rule would become a bona fide competitor with Telstar; and (2) the PSC has moved in the area of RCC's from a position of regulated monopoly to a policy of regulated competition as the most effective means of providing reliable service to the public.

■ As this court held in *Dubois Telephone Exchange v. Mountain States*, supra fn. 2, § 37–2–205(a) does not contemplate that only one public utility will be granted a certificate of public convenience and necessity for furnishing service within a certificated area. The section anticipates that more than one system can co–exist in one area under such terms as may be "just and reasonable." It has been recognized that

4. Section 9–4–114(c), W.S.1977, 1980 Cum. Supp.:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations, or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

one dominant service may not, without effective competition, be an adequate service. Some competition may be in the public interest where it will secure the benefits of an improved service without unduly prejudicing the existing service. *Slay Transportation Co., Inc. v. United States*, E.D.Mo. 1973, 353 F.Supp. 555.

■ We note that Telstar in its evidence made no firm showing that the presence of Rule would be destructive. The testimony of its president was only that it had a substantial investment in equipment and he would "venture to say that it would split the open competition right down the middle, along with Mountain Bell." This is no more than an expression of fear. There was no hard evidence to support what was no more than speculation. The PSC does not exceed its powers in granting competing rights in the absence of evidence other than fear that a certificated business will suffer. *Dion v. Public Utilities Commission*, 1963, 24 Conn.Sup. 402, 192 A.2d 46.

■ The purpose of the authority of the PSC is to secure to the public all the advantages of competition in obtaining fair rates and good service and to protect the public from its disadvantages. It is a fact of life that there are situations in which competition may serve a useful purpose in such matters as to character of service provided, courtesy and efficiency of employees, modernization of equipment, and economy of operation. These are matters of interest to consumers. Self interest in obtaining business and making profits is the greatest of incentives in bringing about advancements. *State ex rel. City of Sikeston v. Public Service Commission of Missouri*, 1935, 336 Mo. 985, 82 S.W.2d 105.

■ The public interest is to be given paramount consideration; desires of a utility are secondary. *Big Horn Rural Electric*

*Company v. Pacific Power & Light Company*, Wyo.1964, 397 P.2d 455. The fact that a new service may have some effect on an existing service does not preclude the creation of additional facilities. Incidental disadvantages are simply weighed in balance against ultimate public advantages. *Hohorst v. Greenville Bus Company*, 1954, 17 N.J. 131, 110 A.2d 122.

■ There is obviously a demand for the radio–telephone services offered by both Telstar and Rule and an absence of any evidence that they cannot both survive and thrive in a competitive atmosphere. We hold that with the state of the evidence in this case a determination of what is in the public interest with respect to a duplication of services was within the judgment of the PSC. The judicial function is exhausted when we can find from the evidence a rational view for the conclusions of the PSC. *Blue Ridge Transportation Co. v. Pentecost*, 1961, 208 Tenn. 94, 343 S.W.2d 903. The PSC was not arbitrary and capricious in its decision.

■ Finally, appellant asserts that the PSC has no jurisdiction to assign frequencies or to designate that one RCC shall operate on VHF and another on UHF in that such jurisdiction rests with the FCC. We are in complete accord with appellant's statement of the law; however, we fail to understand its significance in this case. The PSC has not awarded frequencies nor directed where Rule's communications equipment will be located; it has merely redefined Rule's service area. In so doing, it did note that Rule and Telstar had been assigned different frequencies and, further, the impact on the services available to the public. But that is proper.[5] Additionally, this is a question never presented to either the PSC nor the district court. "The review shall be * * * confined to the record

---

**5.** 47 U.S.C. § 221(b):

"(b) Subject to the provisions of section 301 of this title, nothing in this chapter shall be construed to apply, or to give the Commission jurisdiction, with respect to charges, classifications, practices, services, facilities, or regulations for or in connection with wire, mobile, or point–to–point radio telephone exchange service, or any combination thereof, even though a portion of such exchange service constitutes interstate or foreign communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority."

as supplemented pursuant to Rule 12.08, W.R.A.P., and to the issues raised before the agency. * * *" Rule 12.09, W.R.A.P.; *Wyoming Bancorporation v. Bonham,* Wyo. 1974, 527 P.2d 432, 439.

Affirmed.[6]

ROONEY, Justice, specially concurring.

I concur with the result reached by the majority opinion and generally with the views expressed therein. I have some difficulty with the term and concept of "regulated competition" as used in the majority opinion, i. e., as a purpose for Public Service Commission action. Free competition is the cornerstone of our economic system. The Public Service Commission does not have for its purpose the regulation of competition—although such regulation may indirectly result from its proper activities. The Public Service Commission has been given authority under the police power of the state to regulate rates of public utilities and establish and maintain efficient and safe service without discrimination by them. *Pacific Telephone & Telegraph Co. v. Eshleman,* 166 Cal. 640, 137 P. 1119 (1913); *Tennessee Electric Power Co. v. Tennessee Valley Authority,* 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939); *Bilton Machine Tool Co. v. United Illuminating Co.,* 110 Conn. 417, 148 A. 337 (1930); *Colorado Interstate Gas Company v. Federal Power Commission,* 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206 (1945), rehearing denied 325 U.S. 891, 65 S.Ct. 1082, 89 L.Ed. 2004 (1945); *State Corporation Commission of Kansas v. Wichita Gas Co.,* 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500 (1934); *People of State of New York ex rel. Woodhaven Gaslight Co. v. Public Service Commission of New York,* 269 U.S. 244, 46 S.Ct. 83, 70 L.Ed. 255 (1925). See §§ 37-1-101(a)(vi), 37-1-102, 37-2-112, 37-2-119, 37-2-121, 37-2-122, 37-2-205, 37-2-219, 37-3-101, 37-3-114, 37-6-101, 37-8-106, 37-8-107, 37-8-108, 37-8-201, 37-8-202, 37-8-501, 37-10-102, 37-11-102, W.S.1977. In the exercise of this authority, competition may be regulated indirectly, but such regulation is not the basic purpose for the activities of the Public Service Commission.

The record in this case reflects that the action of the Public Service Commission was conducive to the maintenance of efficient public service. On that basis, I concur.

---

**6.** This has been a difficult case to deal with in that it presents to this court a field of utility regulation with which we have no experience and the parties have not made a record before the PSC which presents a complete background of radio–telephone regulation. It refers to its 1974 case of which the PSC could take judicial notice but we do not have the benefit of the record in that case nor do we have the benefit of Docket Nos. 9658 Sub 1 and 9438 Sub 2, apparently 1978 cases before the PSC upon which it relied for an enlightened view of RCC regulation. The parties have not defined radio terminology used, though fortunately the testimony of Mr. Rule gave us a hint of the meaning of such terms as 37 dbu, VHF and UHF. "FX telephone line" was not explained, however. The PSC has apparently adopted a definition of "regulated competition" disclosed in briefs filed with the district court but it does not set it out in its order. While we often have to ferret out what parties are getting at, briefing and a more comprehensive record would have helped in the work of this court in this case.