198 N.J. Super. 41 (1984)
486 A.2d 356
THE CITY OF ELIZABETH, APPELLANT,
v.
STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION AND BOARD OF PUBLIC UTILITIES, RESPONDENTS.
WASTE DISPOSAL, INC., LANDFILL & DEVELOPMENT CO., INC. AND INTERSTATE WASTE REMOVAL CO., APPELLANTS,
v.
COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY, RESPONDENTS.
BROWNING-FERRIS INDUSTRIES OF ELIZABETH, N.J., INC., BROWNING-FERRIS INDUSTRIES OF NORTH JERSEY, INC. AND BROWNING-FERRIS INDUSTRIES OF SOUTH JERSEY, INC., ALL CORPORATIONS OF THE STATE OF NEW JERSEY, APPELLANTS,
v.
COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY, RESPONDENTS.
OCEAN COUNTY LANDFILL CORPORATION, APPELLANT,
v.
COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF THE STATE OF NEW JERSEY, ET AL., RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1984.
Decided December 21, 1984.
*44 Before Judges ANTELL, J.H. COLEMAN and SIMPSON.
John R. Weigel argued the cause for appellant City of Elizabeth (Frank P. Trocino, attorney; John R. Weigel of counsel and on the brief).
Deborah T. Poritz, Deputy Attorney General argued the cause for Department of Environmental Protection and Board of Public Utilities (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Deborah T. Poritz of counsel and David P. Schneider, Deputy Attorney General, on the brief).
Theodore A. Schwartz argued the cause for appellants Waste Disposal, Inc., Landfill & Development Co., Inc., Interstate Waste Removal Co., and The Ocean County Landfill Corp. (Schwartz, Tobia & Stanziale, attorneys; Theodore A. Schwartz of counsel and Jonathan H. Roth on the brief).
Hilary B. Rosenberg argued the cause for appellants Browning-Ferris Industries of Elizabeth, Inc., et als, (Scerbo, Kobin, Litwin & Wolff, attorneys; Hilary B. Rosenberg on the brief).
The opinion of the court was delivered by, ANTELL, P.J.A.D.
On these appeals, which we have consolidated sua sponte, appellants are landfill operators, a solid waste transporter and a municipality which ask us to invalidate the State Wide Solid Waste Flow Plan, N.J.A.C. 7:26-6.1 et seq., which was adopted effective December 6, 1982. The action under review was taken November 17 and 18, 1982 after a public hearing jointly conducted by the Department of Environmental Protection *45 (DEP) and the Board of Public Utilities (BPU) on October 5, 1982. The hearing was held in compliance with the decision of the Supreme Court in A.A. Mastrangelo, Inc. v. Environmental Protec. Dep't, 90 N.J. 666 (1982), and opportunity was afforded interested parties to submit written comments until October 20, 1982.
In Mastrangelo, a similar regulation adopted by DEP was stricken in part on the ground that DEP's authority was limited to directing the inter-district flow of solid waste among the 22 solid waste management planning districts and that by undertaking to specify the destination of waste streams from the generating municipalities to disposal facilities within the districts, that agency had exceeded its statutory authority. Finding that DEP had participated in weighing and regulating the economic aspects of the solid waste industry, the Court concluded that such determinations were within the exclusive jurisdiction of the BPU. Accordingly, the matters were remanded for reconsideration and the following procedural framework was established for the guidance of the agencies:
Consistent with the foregoing, the cases are remanded to DEP for an administrative hearing pursuant to N.J.S.A. 52:14B-4, to be conducted within 45 days of this decision. Representatives from each of the appellants, as well as BPU, shall participate. Within 15 days of the conclusion of that hearing, the Department is to develop an interdistrict waste flow order in accordance with its statutory responsibilities as defined herein. Within five days thereafter, BPU is to conduct a hearing pursuant to N.J.S.A. 48:13A-5, after which it shall, if it finds "the public interest requires," designate the solid waste collectors and disposal facilities that will be required to collect, transport and receive the solid waste that has been redirected as a result of the above mentioned interdistrict waste flow order. The record developed at the DEP hearing should serve as the basis for the BPU proceedings.
Because these hearings are substantially contemporaneous, and inasmuch as they involve the same subject matter, albeit different aspects of the underlying problem, we leave it to DEP and BPU to decide whether in the alternative to conduct one joint administrative hearing. Whichever course the agencies decide on, their decision should focus principally on which alternative will bring about the most expeditious result.
Within 45 days after the conclusion of either the successive DEP, BPU hearings or the joint DEP-BPU hearing, DEP shall formulate a final interdistrict solid waste flow strategy, which shall reflect both DEP's findings and BPU's designation of those collection and disposal facilities required to collect, *46 transport and receive the solid waste flows. In the interim the regulations as originally promulgated by DEP remain in full force and effect. [Id. at 688.]
The Supreme Court did not retain jurisdiction over the matter and in these appeals we are called upon to determine the validity of the agencies' action in light of the Mastrangelo standards.
Appellants' principal contention is that the mandate of the Supreme Court was disregarded by the agencies in three critical respects. They contend that the defect fatal to the regulation considered in Mastrangelo was perpetuated in this proceeding in that DEP, and not BPU, formulated much of the waste flow strategy that directed the waste stream from generating municipalities to specific disposal sites. They further contend that no economic analysis was made and, finally, that they were entitled to a trial-type evidentiary hearing, complete with the right to cross-examine witnesses, to present witnesses on their own behalf and to be provided with findings of fact.
The claim that the intra-district waste flows were designated by DEP, and not BPU, rests upon a statement made at the outset of the hearing on October 5, 1982 by Commissioner Barbour of the BPU. He announced that DEP had proposed not only an inter-district waste flow order, but also that it "proposed for the Board's consideration, a comprehensive state wide assignment of specific waste flows to specific disposal facilities." Appellants do not claim they attempted to explore the issue during the hearing that followed, and we have not been told of any further elaboration of the Commissioner's statement. In our view, DEP's presentation of a proposal "for the Board's consideration" is not a sufficient showing of irregularity to overturn the presumption favoring the validity of administrative proceedings. As the Supreme Court noted of administrative actions such as this, the burden rests on the party challenging the regulation to demonstrate that it is "arbitrary, capricious, unduly onerous or otherwise unreasonable." New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561 (1978), quoting from Consolidation Coal Co. v. Kandle, *47 105 N.J. Super. 104, 118 (App.Div. 1969) aff'd o.b. 54 N.J. 11 (1969). Mastrangelo directed only that the evaluation of economic factors relevant to specific disposal site designations lies exclusively within the competence of BPU. The court did not preclude the introduction of material information and recommendations from other interested state agencies so long as BPU made the ultimate decision.
Appellants' claim that the administrative proceedings were also defective for lack of an "economic analysis" rests upon the misconception that this is what Mastrangelo prescribes. All that the Supreme Court said in this regard was that BPU's
authority involves the assessment of the economic repercussions that may result as a consequence of the interdistrict waste flow strategy formulated by DEP, particularly in respect of the individual participants in the solid waste disposal and collection industry. [Mastrangelo, 90 N.J. at 688.]
Although appellants insist that there are no economic data in the administrative record to support a belief that such an assessment was actually made, we disagree that the required data base was actually lacking. We note at the outset that "[f]acts sufficient to justify rules and regulations thus promulgated are assumed and the burden is on the one who asserts the contrary." In re Promulgation of Rules of Practice, 132 N.J. Super. 45, 49 (App.Div. 1974), certif. den. 67 N.J. 95 (1975). "The burden is not upon the Commissioner to establish that the requisite facts exist; [r]ather, the burden is on petitioners to establish that they do not." Consolidation Coal Co. v. Kandle, 105 N.J. Super. at 114. The agencies were provided with information by the solid waste management planning districts as to actual and projected waste generation figures for every municipality in the State, the location of existing landfills and landfills scheduled to be operational in each district. They were also informed as to distances between each municipality and the existing and planned disposal sites, existing waste flow patterns, and the identity of the solid waste hauler(s) for each municipality and the terms of their contracts where appropriate. *48 From DEP's engineering and registration files and BPU's registration statements, information as to every existing landfill was obtainable, relating to current waste loadings, remaining capacity, types of waste accepted and ability of the facility to accommodate increased waste flows. Also contained in agency files are the estimated life expectancies and design capacities for all landfills, including those still in the planning stage, as well as information on tariffs for all solid waste collector/haulers and disposal facilities within the State. In our view, the foregoing information was sufficiently translatable by the application of agency expertise into terms which would enable BPU to make the required "assessment of the economic repercussions" mandated by Mastrangelo. It is settled that
... quasi-legislative administrative rulemaking does not require specific findings of fact based on evidence adduced at the public hearing in support of each regulatory provision subsequently adopted and .. . the existence of such supporting factual bases would be presumed until rebutted by the party attacking the administrative action. [New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. at 560.]
We also disagree that under Mastrangelo, a trial-type evidentiary hearing was required. Appellants' contention to the contrary relies on the instruction in Mastrangelo that "BPU is to conduct a hearing pursuant to N.J.S.A. 48:13A-5...." 90 N.J. at 688. They argue that because this provision of the Solid Waste Utility Control Act deals with the granting of franchise areas by the BPU for which, appellants maintain, qualifying hearings are customarily of a trial-type nature, citing In re Greenville Bus Co., 17 N.J. 131 (1954); In re Marion Bus Transp. Co., 53 N.J. Super. 308 (App.Div. 1958); Hohorst v. Marion Bus Transp. Co. Inc., 5 N.J. Super. 279 (App.Div. 1949); New Jersey Power & Light Co. v. Borough of Butler, 4 N.J. Super. 270 (App.Div. 1949) and Fornarotto v. Board Pub. Utility Commrs., 105 N.J.L. 28 (Sup.Ct. 1928), the Supreme Court intended that such hearings be held in this case.
We disagree and conclude that Mastrangelo did not remand for the type of hearing usually accorded in franchise area proceedings. This view is supported, first, by the Supreme *49 Court's pointed observation that if "specific resource recovery plants or other collectors or disposal facilities believe that they need a franchise grant to assure economic survival, they should apply to the BPU on a case-by-case basis." Mastrangelo, 90 N.J. at 686. If the court contemplated that the proceedings were being remanded for franchise area hearings in all cases, it would not have stated that such hearings should be applied for in individual cases where needed.
We conclude that a trial-type hearing was not intended by the Mastrangelo opinion for the further reason that appellants raised this very question before the Supreme Court prior to the hearing and it was apparently considered. On August 25, 1982 the agencies moved before the Supreme Court for a ten-day extension of the forty-five day limitation for the conduct of the joint administrative hearing which they expressly stated was to be of the rulemaking variety. Counsel for Mastrangelo (also counsel herein) by letter dated August 30, 1982 consented to the extension, but objected to the State's choice of a quasi-legislative rather than a quasi-judicial hearing, urging largely the same argument as is now before us. Although the Supreme Court granted the State's motion to alter the procedural timetable by its order of September 14, 1982, it did not address appellants' objection to the format of the proposed hearings. We can only conclude that, in what the Court itself had described as a "crisis" situation, id. at 670, it would not have permitted hearings of such magnitude and importance to the public to proceed in the form proposed unless it was satisfied that such a course was consistent with its intention expressed in Mastrangelo.
Finally, the Court explicitly remanded the matter to DEP for an administrative hearing "pursuant to N.J.S.A. 52:14B-4," as to which the parties agree only a quasi-legislative proceeding could have been intended, and directed that the record there developed "should serve as the basis for the BPU proceedings." Id. at 688. It is difficult to conceive how in the following paragraph, authorizing the agencies "to conduct one joint administrative *50 hearing," the Court could have intended a hearing which was both quasi-legislative and quasi-judicial.
A factor also meriting comment is the time limitation placed upon the proceedings. As the Court stated, its focus was on bringing about "the most expeditious result." Id. at 689. We cannot reasonably infer that the Supreme Court intended BPU to formulate findings of fact concerning the economic impact of a solid waste management strategy upon affected parties in 565 municipalities within the short time alloted.
Appellants' contentions and their expressions of dissatisfaction with the economic aspects of the order under review are not to be lightly dismissed. However, the surrounding circumstances, particularly the need for prompt and flexible regulatory action, are such that the fine tuning necessary to correct its economic impact in individual cases should most appropriately be accomplished in later rate modification hearings accompanied by the usual quasi-judicial safeguards.
Appellant Ocean County Landfill contends, additionally, that to the extent the regulation limits it to receiving waste generated from within Ocean County, it excludes waste from out-of-state in violation of the Commerce Clause of the Federal Constitution. See City of Philadelphia v. State of New Jersey, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). The point missed by this argument, however, is that the regulation does not preclude the importation of waste into New Jersey. It merely designates the disposal sites available to specific solid waste generating districts. The regulation was not adopted in furtherance of "protectionist" policies and it does address a matter of legitimate local concern, that is, avoiding the excessive concentration of solid waste in areas with inadequate disposal capacities.
Prior to the adoption of the regulation in question, the City of Elizabeth disposed of its solid waste at the Municipal Sanitary Landfill Authority in the Hackensack Meadowlands. By the regulation under review, the City's solid waste stream *51 was redirected to Middlesex County at a claimed additional annual cost of between $300,000 (if the waste is delivered to Industrial Land Reclaiming Landfill in Edison) and $1,129,184 (if delivered to Global Landfill in Old Bridge). The City's argument is that the administrative action is arbitrary, capricious and unreasonable because "not based on an adequate economic analysis of waste flow."
In addition to the views already expressed, we point out that the economic data upon which the City relies in this appeal were, in fact, presented by its mayor to the DEP and the BPU at their joint public hearing of October 5, 1982. Under Mastrangelo, DEP and BPU were to serve complementary functions. The function of DEP is to guard against the over-utilization of available disposal capacity; the role of BPU is to measure the economic impact of waste direction. The agencies evidently charted their course in response to a perception that the redirection of waste flow from the City of Elizabeth was a necessary conservation measure to prolong the disposal capacity of the Hackensack Meadowlands Solid Waste Planning District. This is a goal specifically envisioned by the Legislature in enacting the Solid Waste Management Act, N.J.S.A. 13:1E-2, and the Hackensack Meadowland Reclamation Act, N.J.S.A. 13:17-1. Nothing presented to us supports a conclusion that the City has rebutted the presumption of reasonableness to be accorded this administrative action.
Further, it appears to us that the redirection of waste flow, so far as it affects the City of Elizabeth, was discussed and the issue raised in connection therewith was resolved in Mastrangelo. That decision, dealing with the allocation of authority between DEP and BPU, concluded that DEP's authority was limited to directing inter-district waste flow. By this was meant "the power to assess the solid waste disposal capacities of each of the solid waste management districts and to direct any district to dispose of its waste in any other district." Mastrangelo, 90 N.J. at 686. The City's precise complaint here has only to do with the redirection of inter-district waste flow, and *52 Mastrangelo clearly held that the DEP modifications of the Union, Middlesex and HMDC plans lay within its statutory authority and were affirmed accordingly. Id. at 687.
Affirmed.