603 A.2d 967

D.I.A.L., INC., A NEW JERSEY NON-PROFIT CORPORATION, NORMAN SMITH AND BEA WARRINGTON, PETITIONERS-APPELLANTS, v. NEW JERSEY DEPARTMENT OF COMMUNITY AFFAIRS, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 7, 1992—Decided March 3, 1992.

428

430

Before Judges MICHELS, HAVEY and CONLEY.

*David J. Popiel* argued the cause for appellants (Disability Law Clinic/Community Health Law Project, attorneys; *Stuart H. Weiner* and *David J. Popiel* on the brief).

*John J. Chernoski,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, and *John J. Chernoski* on the brief).

The opinion of the court was delivered by

HAVEY, J.A.D.

Appellants challenge certain amendments to the Barrier–Free Subcode, *N.J.A.C.* 5:23–7.1 to –7.116, of the State's Uniform Construction Code adopted by the Commissioner, Department of Community Affairs (DCA) on June 15, 1990. Specifically, appellants seek invalidation of the following regulations: (1) *N.J.A.C.* 5:23–7.95 (adaptable units: kitchens); (2) *N.J.A.C.* 5:23–7.3(a)6 (exemption for floor or spaces containing only mechanical equipment); (3) *N.J.A.C.* 5:23–7.8(e) (exemption for

alteration of historic buildings); (4) *N.J.A.C.* 5:23–7.18(b)2 (raised/depressed areas in restaurants, nightclubs and dance halls), and (5) *N.J.A.C.* 5:23–7.9(c) (access standards for places of incarceration).[1]

On September 5, 1989, the Commissioner of the DCA proposed the pertinent amendments to the Barrier–Free Subcode and a public hearing on the proposal was conducted on October 2, 1989. Oral and written comments were received by the DCA concerning the proposed amendments. The DCA adopted the amendments on June 15, 1990, effective August 6, 1990. *See* 22 *N.J.R.* 2267(a). D.I.A.L., a nonprofit organization concerned with the ability of the physically disabled to live independently, and two individuals, Norman Smith and Bea Warrington, filed this appeal challenging the adoption of the amendments. They argue that the amendments violate the statutory scheme intending to afford physically disabled persons relief from architectural barriers "that have virtually imprisoned them in the past." They also assert that the "published reasons" for revising *N.J.A.C.* 5:23–7.95 are "so vague as to violate the Administrative Procedure Act" (APA), *N.J.S.A.* 52:14B–1 to – 21. Finally, appellants advance an array of challenges to the specific amendments.

The Handicapped Access Law (Act), *N.J.S.A.* 52:32–4 to –16, requires that all plans and specifications for the construction of any public building must provide facilities for the physically handicapped, to the extent deemed feasible by the contracting authority. *N.J.S.A.* 52:32–4. The enforcing agency is authorized to grant exceptions from the specific requirements and specifications of the Act in cases of practical difficulty, but only when it is clearly evident that equivalent facilitation and protection of the physically handicapped remain

---

[1]Appellants also challenged *N.J.A.C.* 5:23–7.11(a)6, regulating entrances to multi-family dwellings. However, the challenge was rendered moot when the DCA deleted the regulation effective September 16, 1991. *See* 23 *N.J.R.* 1902(a) (June 17, 1991) and 23 *N.J.R.* 2861(b) (September 16, 1991).

intact. *N.J.S.A.* 52:32–8. Such exceptions apply only to the specific requirement in question, and do not extend to all requirements of the standards and specifications mandated by the Act. *N.J.S.A.* 52:32–9. The DCA has the duty to promulgate regulations prescribing the kinds, types and quality of public facilities for the physically handicapped, *N.J.S.A.* 52:32–5, and administration and enforcement of the Act is to be in accordance with the State Uniform Construction Code Act (UCC Act), *N.J.S.A.* 52:27D–119 to –141. *See N.J.S.A.* 52:32–7.

The UCC Act requires the Commissioner of the DCA to adopt a State Uniform Construction Code for the purpose of regulating the structural design, construction, maintenance and use of buildings or structures to be erected, and the alteration, renovation and repair of buildings or structures already erected. *N.J.S.A.* 52:27D–123. Under the UCC Act, the Commissioner is authorized to adopt a "Barrier–Free Subcode" to ensure that adequate features are available in buildings and structures so as to make them accessible to and usable by the physically handicapped. *N.J.S.A.* 52:27D–123b. A new Barrier–Free Subcode was adopted on October 10, 1986, which provided for comprehensive standards for the kinds, types, and quality of facilities for the handicapped. *N.J.A.C.* 5:23–7.1 to –7.116.

In 1986, several individuals, including appellant Norman Smith, challenged various provisions of the Barrier–Free Subcode. In an unreported opinion, *Community Health Law Project v. New Jersey Dep't of Community Affairs*, A–1496–86T7 (June 10, 1988), *certif. denied*, 113 *N.J.* 343, 550 *A.*2d 456 (1988) (*CHLP*), we set aside several of the challenged provisions, including the then extant regulations pertaining to the exemption for floors or spaces containing mechanical equipment, and the provision regulating renovations to historic buildings. The DCA addressed our concerns regarding these regulations by proposing amendments to the regulations found invalid

by us in *CHLP,* as well as proposing other regulations now being challenged.

We must consider the challenge to each amendment applying the following well-settled principles. An agency's grant of authority to promulgate regulations is to be liberally construed in order to enable the agency's accomplishment of its statutory goals. *In re Solid Waste Util. Cust. Lists,* 106 *N.J.* 508, 516, 524 *A.*2d 386 (1987). Also, "[w]e accord substantial deference to the regulations adopted by administrative agencies, based on our recognition that certain subjects are within the peculiar competence of that agency." *In re Amendment of N.J.A.C. 8:31B-3.31,* 119 *N.J.* 531, 543, 575 *A.*2d 481 (1990). Thus, agency regulations are accorded a presumption of reasonableness, *id.* at 544, 575 *A.*2d 481, and we may not substitute our judgment for the expertise of the agency. *Dougherty v. Dep't of Human Serv.,* 91 *N.J.* 1, 6, 449 *A.*2d 1235 (1982). Moreover, the burden is on the party challenging the regulation to establish its invalidity. *In re Amendment of N.J.A.C. 8:31B-3.31,* 119 *N.J.* at 544, 575 *A.*2d 481; *Council of N.J. State College Locals v. State of N.J.,* 251 *N.J.Super.* 577, 583, 598 *A.*2d 1237 (1991). A regulation will be set aside only if it is arbitrary or capricious, or if it alters the terms of the statute it purportedly effectuates, or frustrates the policies advanced by the statute. *In re Amendment of N.J.A.C. 8:31B-3.31,* 119 *N.J.* at 544, 575 *A.*2d 481; *In re Repeal of N.J.A.C. 6:28,* 204 *N.J.Super.* 158, 160–61, 497 *A.*2d 1272 (App.Div.1985). Thus, if the regulation does not frustrate the policies embodied in the enabling statute, a rebuttable presumption of validity attaches to the regulation. *In re Weston,* 36 *N.J.* 258, 263, 176 *A.*2d 479 (1961), *cert. denied sub nom., Weston v. New Jersey State Bd. of Optometrists,* 369 *U.S.* 864, 82 *S.Ct.* 1029, 8 *L.Ed.*2d 84 (1962).

Also, we generally place considerable weight on the construction of a statute given by the agency charged with enforcing it, *Passaic Daily News v. Blair,* 63 *N.J.* 474, 484, 308

*A*.2d 649 (1973), and we recognize that agencies must be flexible and responsive to changing conditions in adopting regulations. *Radiological Soc'y v. New Jersey State Dep't of Health*, 208 *N.J.Super.* 548, 560, 506 *A*.2d 755 (App.Div.), *certif. denied*, 104 *N.J.* 444, 517 *A*.2d 434 (1986).

I

Appellants first challenge the amendment to *N.J.A.C.* 5:23–7.95, which regulates the adaptability standard of kitchen units.[2] The amendment deletes requirements from the prior regulation that: (1) the sink and surrounding counter, and part of the wide counter-work surface be adjustable or replaceable to a specified height; (2) all controls for kitchen appliances, sinks and other kitchen equipment can be operated by the handicapped, and (3) base cabinets be removable underneath the sink and counter-work area. Appellants argue that the amendment violates the underlying purposes of the Act which provides that "all plans and specifications for the construction or remodeling of any public building ... shall provide facilities for the physically handicapped." *N.J.S.A.* 52:32–4. They assert that without the adaptable kitchen components, kitchens "will have to be ripped out ... with considerable effort and at much expense" to the handicapped occupant.

 There is no doubt that in enacting the Act, the Legislature intended to encourage construction of units which would facilitate access by the handicapped "whose needs had been overlooked and ignored for many years." *D.I.A.L. v. City of Clifton Constr. Bd. of Appeals*, 218 *N.J.Super.* 74, 88, 526 *A*.2d 1125 (App.Div.1987), *certif. denied*, 113 *N.J.* 335, 550 *A*.2d

---

[2]Adaptability is defined as:

the ability of certain building elements, such as kitchen counters, sinks, and grab bars, to be raised, lowered, added or otherwise altered so as to accommodate the needs of either the disabled or nondisabled, or to accommodate the needs of persons with different types or degrees of disability. [*N.J.A.C.* 5:23–7.6.]

451 (1988). However, the Legislature also recognized that "there were competing interests to consider and chose to set limits on when such activities would mandate invocation of the Act's provisions." *Id.* It is therefore entirely proper for the administrative agency to balance the competing interests of the general public against those affected by the proposed regulation. *See American Cyanamid Co. v. Dep't of Envtl. Protection,* 231 *N.J.Super.* 292, 311, 555 *A.*2d 684 (App.Div.), *certif. denied,* 117 *N.J.* 89, 563 *A.*2d 847 (1989).

Here, the Commissioner of the DCA, in amending the regulation, considered the competing interests of the handicapped against those of the builder who will initially bear the financial burden of constructing adaptable kitchens, as well as the nonhandicapped and nonwheelchair-bound handicapped residents of such units. Of significance is that the amendment to the regulation did not completely eliminate all the adaptability standards for a kitchen unit. *See N.J.A.C.* 5:23–7.95. Accordingly, part of the cost of making the unit adaptable remains with the builder. Thus, the DCA made a measured judgment that the handicapped resident should bear some expense in making a kitchen adaptable, and conversely that the builder should not bear the entire financial burden therefor. Also, facts sufficient to justify a regulation are presumed to exist, and the burden is on the party attacking the regulation to establish otherwise. *City of Elizabeth v. State of N.J. Dep't of Envtl. Protection,* 198 *N.J.Super.* 41, 47, 486 *A.*2d 356 (App. Div.1984). Appellants have failed to demonstrate that the financial burden to a handicapped occupant to make the kitchen unit adaptable would be overly burdensome, or that DCA's balancing of the competing interest of all concerned was arbitrary, capricious or unreasonable.

Appellants next argue that the summary published by the DCA respecting revised *N.J.A.C.* 5:23–7.95 violated the APA because it did not define with specificity what "certain problems" the agency "believes to have been experienced by resi-

dents in connection with adaptable kitchen design." The summary published by the DCA reads as follows:

> This section has been modified to delete the requirements for adjustable countertops and removable base cabinets, as well as the requirement pertaining to controls on appliances, as these requirements present certain problems for residents and the items in question can be altered for use by the disabled without a great deal of difficulty.

The APA requires that the agency publish a summary of the proposed regulation, which shall include among other things "a clear and concise explanation of the purpose and effect of the rule...." *N.J.S.A.* 52:14B–4(a)(2). The purpose of such a notice statute is to afford interested parties the opportunity to present their views on a proposed regulation. *See American Cyanamid Co.,* 231 *N.J.Super.* at 309, 555 *A.*2d 684. Any regulation not promulgated in "substantial compliance" with the APA procedures is invalid. *N.J.S.A.* 52:14B–4(d).

We are satisfied that the published notice complied with the APA. It explained that the requirements for adjustable countertops and other kitchen features were being deleted because of problems encountered by residents in units having such adaptable components. It also noted that alterations to the kitchen by the disabled could be accomplished "without a great deal of difficulty." As we have stated, the facts supporting the DCA's conclusions are presumed to exist. *City of Elizabeth,* 198 *N.J.Super.* at 47, 486 *A.*2d 356. Thus, the general public was given notice as to the reasons for the proposed amendment, and was capable of presenting arguments and facts countering the reasons advanced by the DCA. Indeed, the DCA received numerous comments on the proposal, both for and against it. One comment was from D.I.A.L., which addressed precisely the same issues raised on appeal. It is thus difficult for us to conclude how the "vagueness" of the notice prevented meaningful comment during the hearings.

## II

Prior to the 1990 amendments to the Barrier–Free Subcode, *N.J.A.C.* 5:23–7.18(b)2 provided that the use of raised or depressed floors in nightclubs, dance halls and restaurants was limited to ten percent of the usable net area of the facility. The 1990 amendment to *N.J.A.C.* 5:23–7.18(b)2, now being challenged, provides that the following areas need not be made accessible:

> In Use Group A–2 and in those buildings or areas of Use Group A–3 that are used as restaurants, raised or depressed areas not exceeding 3,000 square feet of total floor area shall be allowed provided that at least one-third of the usable net area is located on an accessible route of travel and provided that identical facilities and services are available on accessible levels.

The DCA adopted the amendment to conform with a 1987 amendment to the Act, *N.J.S.A.* 52:32–5, which, in pertinent part defines small and large buildings, and provides that:

> Large buildings shall be required to have accessible entrances, facilities for the physically handicapped on all accessible floors, and elevators or other means of access for the physically handicapped between floors, except floors which contain ... less than 3,000 square feet of total floor area.

Appellants argue that the amendment violates the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42, because the effect of the revision will "dramatically reduce the accessible portions of small restaurants and night clubs."

The LAD is intended to provide the handicapped full and equal access to society, limited only by physical limitations they cannot overcome. *Andersen v. Exxon Co.*, 89 *N.J.* 483, 495, 446 *A.*2d 486 (1982). Since the LAD addresses the same subject matter as the Act, the two statutes should be viewed together and harmonized. *See Loboda v. Township of Clark*, 40 *N.J.* 424, 435, 193 *A.*2d 97 (1963). It is undisputed that the challenged amendment to the regulation complies with the 1987 amendment to the Act. It would be unreasonable to claim that a regulation involving the construction of accessible facilities for the handicapped, which complies with the Act and whose purpose is to ensure such access for the handicapped, is nevertheless violative of the LAD. As the DCA persuasively argues,

to hold otherwise could "create the situation in which the owner of a building, who designed his structure in complete conformity with the Barrier–Free Subcode, could [nevertheless] be held liable for a violation of the [LAD]." We agree. We conclude that since the regulation complies with the Act, it was a valid exercise of the agency's rule-making power. The fact that the amended regulation is somewhat more restrictive with respect to access for the handicapped does not mean that it violates the LAD. Indeed, the regulation provides that "identical facilities and services" for the handicapped must be available on accessible floors, and thus the handicapped are afforded access to the same facilities as are the nonhandicapped.

### III

We also uphold the amendment to *N.J.A.C.* 5:23–7.9(c)2, which applies handicapped-access standards to penal institutions. The prior regulation provided that buildings used for places of incarceration shall make accessible all public, common and employee areas, including toilet or bathing facilities.[3] In *CHLP*, we found that adequate and sufficient facilities may not be available for handicapped persons if only public, common and employee areas of detention facilities need be handicapped "accessible." We therefore invalidated the regulation because it frustrated the underlying purposes of the Act.

The DCA responded to *CHLP* by adopting the present regulation which provides that places of incarceration shall be made accessible as follows: (1) at least one inmate confinement area or room per institution shall be accessible; (2) at least one toilet and bathing facility per institution provided for inmates shall be accessible, and (3) all public or common areas and employee areas, including toilet or bathing facilities associated with these

---

[3]"Accessible" is defined as "an environment that will permit a handicapped person to operate independently with comparative ease under normal circumstances and with little or no other assistance. This term is synonymous with the term barrier-free." *N.J.A.C.* 5:23–7.6.

areas, shall be made accessible. *N.J.A.C.* 5:23–7.9(c)1 to – 7.9(c)3.

Appellants acknowledge that the amendment corrects many of the deficiencies in the prior regulation, but nevertheless argue that the accessible bathing/toilet facility should be located near the accessible inmate cell. Otherwise, appellants argue, a handicapped inmate may be required "to travel from one end of a large prison or jail building to the other, in order to be able to use the toilet and bathing facilities."

We cannot say that the Commissioner acted arbitrarily in adopting the amendment. The amendment, when viewed as a whole, provides not only that one accessible toilet/bathing facility per institution be provided, but also that one inmate confinement area/room per institution shall be accessible as well as all public/common bathing and toilet facilities. As the DCA points out, if a toilet/bathing facility is located within an accessible cell, the facility must also be accessible, since otherwise the cell's environment would not permit the inmate to operate independently or with little or no assistance. If the cell does not have its own toilet facilities, the bathroom used by all inmates would be considered a common area and thus would have to be accessible. *See N.J.A.C.* 5:23–7.9(c)2. Also, in small "lock-up" facilities having only one toilet or bathing area located outside the cell, the area must be accessible. *Id.* The regulation, read as a whole, is entirely consistent with the purpose of the Act, since it provides for the requisite types, kinds and quality of facilities for handicapped inmates.

IV

We agree with appellants that the amended regulation relating to floors containing mechanical equipment, *N.J.A.C.* 5:23–7.3(a)6, must be set aside as invalid. Prior to the 1990 amendments, the subcode exempted "[m]echanical and incidental storage spaces" from its requirements. We invalidated that regulation in *CHLP* because its wording might well preclude

the employment of custodians, mechanics and other contractors from access to storage areas and thus frustrate the policies of the Act. The 1990 amendment, adopted in response to *CHLP*'s concerns, now exempts "[f]loors or spaces containing only mechanical equipment...." *N.J.A.C.* 5:23–7.3(a)6.

In our view, the DCA has failed to address the problems with the regulation noted in *CHLP*. As written, the regulation will continue to discourage the employment of handicapped contractors and will make it difficult for handicapped occupants and visitors to gain access to mechanical equipment. While it is true the Act does not require that every space in a public building be made handicapped accessible, the exempting of all "[f]loors or spaces containing only mechanical equipment" would frustrate the policy of the Act which is to ensure that proposed construction or remodeling of structures used by the public provide facilities for the handicapped in order to encourage and promote the movement and rehabilitation of such persons. *See D.I.A.L.*, 218 *N.J.Super.* at 81–82, 526 *A.2d* 1125. We therefore invalidate the regulation and remand with direction that it be redrafted so as to avoid the concerns addressed in *CHLP*.[4]

## V

We also find invalid *N.J.A.C.* 5:23–7.8(e), the amendment pertaining to exemption of historic buildings. Before adopting *N.J.A.C.* 5:23–7.8(e), a similar regulation, *N.J.A.C.* 5:23–7.3(a)7, provided that "[h]istoric buildings and sites shall be exempt with regard to those provisions of the subchapter which would change the historic character of the building." In *CHLP*, we held that there was no provision in the Act granting

---

[4]We also note that *N.J.S.A.* 52:32–5, as amended in 1987, differentiates between large and small buildings regarding whether floors containing only mechanical equipment are exempt from the subcode. *N.J.A.C.* 5:23–7.3(a)6 makes no such distinction. Accordingly, on remand the DCA must take into consideration *N.J.S.A.* 52:32–5, as amended, in drafting the revised regulation.

the Commissioner of the DCA the authority to grant such blanket exemptions to historic buildings in those instances where compliance with the subcode would result in a change in the historic character of the building. Since we found that the regulation may be construed to alter the basic terms of the legislative enactment, we set it aside. However, we recognized that it was not unreasonable in a remodeling of an historic building to seek to preserve its historic character. We therefore invited the drafting of a "duly restrictive regulation" which might well constitute a valid exercise of the Commissioner's rule-making powers.

In response, the challenged regulation, *N.J.A.C.* 5:23–7.8(e) was adopted, which reads:

> The provisions of this subchapter shall not be mandatory for the alteration of historic buildings, structures or sites provided that the following conditions are met:
>
> 1. The historic building, structure or site is designated, listed or registered by the State or Federal government authority as a historic building or site; and
>
> 2. A finding is made by the designating, listing or registering authority that compliance with the provision of the subchapter in question would alter the historic character of the building or site.

The problem with the amendment is that it still may be interpreted as granting a blanket exemption to buildings whose historical character would be "alter[ed]" upon enforcement of the subcode. There is no provision in the Act specifically enumerating historic buildings and sites as exempt from its provisions, and the Commissioner is precluded, by statute and regulation, from establishing such a blanket exemption.

Moreover, in our view, the minor change in semantics from the prior regulation is not the "duly restrictive" regulation we envisioned in *CHLP* which may constitute a valid exercise of the Commissioner's rule-making power. As drafted, *any* alteration, no matter how minor, of the historic character of such a building would exempt the modification from the subcode. Further, the regulation defines no objective standards by which the "designating, listing or registering authority" is to determine if compliance with the subcode would "alter the historic

character of the building or site." *N.J.A.C.* 5:23–7.8(e)2. Essentially, the amendment is virtually identical to the regulation we invalidated, since it still provides no objective guidance as to when an exemption would be appropriate.

The recently passed Americans with Disabilities Act (ADA), 42 *U.S.C.A.* § 12101 to § 12213, addresses the issue of exempting historic buildings from regulations which require certain facilities to be accessible to the handicapped. It provides that before alterations to historic buildings may be exempt from the provisions of ADA regulations, they must *"threaten* or *destroy* the [building's] historic significance."* 42 *U.S.C.A.* § 12204(c) (emphasis added). Clearly, the federal standard of exemption is more demanding than *N.J.A.C.* 5:23–7.8(e), which requires only a finding that application of the subcode will "alter the historic character of the building or site." We need not decide whether the federal act or its proposed regulations preempt *N.J.A.C.* 5:23–7.8(e).[5] We make reference to it only to underscore the point that without objective, reasonable standards to control exemption from the subcode, which must in part embody the Act's underlying policy of encouraging movement and rehabilitation of the physically handicapped, the present regulation suffers from the same infirmities as the prior regulation we found invalid in *CHLP.* If the DCA is of the view that preservation of historic buildings is an important public policy which in fact supersedes the policies embodied in the Act of encouraging the movement and rehabilitation of the physically handicapped, its remedy is to petition the Legislature and request an amendment to the Act exempting historic buildings from its reach. Without such legislative enactment, the blanket exemption created by *N.J.A.C.* 5:23.7.8(e) remains invalid.

---

[5]The ADA applies to public accommodations, commercial facilities and public entities, as defined by 42 *U.S.C.A.* § 12131(1) and § 12181(2), (6) and (7). Since the issue has not been raised, we also do not pass upon whether the provisions of the ADA or its attendant regulations may preempt other provisions of the Barrier–Free Subcode.

We uphold the validity of *N.J.A.C.* 5:23–7.9(c)2; *N.J.A.C.* 5:23–7.18(b)2 and *N.J.A.C.* 5:23–7.95. We invalidate *N.J.A.C.* 5:23–7.3(a)6 and *N.J.A.C.* 5:23–7.8(e) and remand to the Commissioner for revision of the invalidated regulations in accordance with this opinion.